# EXHIBIT NO. 1

UNITED STATES DISTRICT COURT
STATE OF MINNESOTA

---

Kathleen C. Baxter-Knutson as trustee for
the-next-of kin of Kyle Allan Baxter-Jensen,

Case No. 14-CV-03796

                         Plaintiff,

**AMENDED COMPLAINT**

v.

**JURY TRIAL DEMANDED**

Travis Brandt, acting in his individual capacity
as a Stearns County correctional officer,
Elaine Byker, acting in her individual capacity
as medical staff in the Stearns County Jail,
John Does 1-2, acting in their individual capacities
as supervisory Stearns County officers, John
Does 3-6, acting in their individual capacities as
Stearns County correctional officers, John Does
7-9, acting in their individual capacities as jail
medical staff in the Stearns County Jail,
and Stearns County,

                         Defendants.

---

      For her Complaint, Kathleen C. Baxter-Knutson as trustee for the next-of-kin of

Kyle Allan Baxter-Jensen states and alleges as follows:

      1.      This is an action for money damages for the wrongful death of Kyle Allan

Baxter-Jensen ("Baxter-Jensen") resulting from the deliberate indifference of Stearns County

and the individual Defendants who are correctional employees of Stearns County acting in

their individual capacities at the Stearns County Jail from November 13, 2010 until

December 4, 2010, the date Baxter-Jensen committed suicide.

2.     The deliberate indifference of Stearns County and the individual Defendants proximately caused Baxter-Jensen's death, thereby violating his well-settled federal civil rights while acting under the color of state law.

3.     Kathleen C. Baxter-Knutson ("Plaintiff") was appointed as Trustee for the Next-of-Kin of Baxter-Jensen on July 21, 2014 by Hennepin County District Court Judge Kathleen Sheehy.  A copy of that Order and the Oath and Consent of Trustee are attached hereto as Exhibit A.

4.     Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Eighth and Fourteenth Amendments to the Constitution, and 28 U.S.C. §§ 1331 and 1343(3).  The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this cause of action.

5.     Baxter-Jensen was at all times material herein a citizen of the United States and a resident of St. Cloud, Minnesota.  He was born on June 4, 1982, making him 28-years-old at the time of his death.  He suffered from serious mental illness, including anxiety and depression and, prior to this incarceration, he had attempted suicide.

6.     Defendant Stearns County is a "public corporation," which can be sued under Minnesota Statute § 373.01(1).  Stearns County is, and at all relevant times was, a political entity charged with control and supervision of all personnel of the Stearns County Jail.

7.     Upon information and belief, Defendant Travis Brandt ("Brandt") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as a correctional officer at the Stearns County Jail.  Brandt is sued in his individual capacity.

8.      Upon information and belief, Defendant Elaine Byker ("Byker") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as a jail medical staff employee.  Byker is sued in her individual capacity.

9.      Upon information and belief, Defendants John Doe 1-2 were at all times material herein, citizens of the United States, residents of the State of Minnesota, and acting under color of state law as supervisors of the Stearns County Jail's correctional staff.  Does 1-2 are sued in their individual capacities.

10.     Upon information and belief, Defendant John Doe 3-6 were at all times material herein, citizens of the United States, residents of the State of Minnesota, and acting under color of state law as Stearns County Jail's correctional staff.  Does 3-6 are sued in their individual capacities.

11.     Upon information and belief, Defendant John Doe 7-9 were at all times material herein, citizens of the United States, residents of the State of Minnesota, and acting under color of state law as jail medical staff employees of Stearns County Jail.  Does 7-9 are sued in their individual capacities.

**FACTUAL SUMMARY**

12.     On November 13, 2010, Baxter-Jensen was arrested for driving while intoxicated, driving after revocation and no proof of insurance.

13.     While in the squad car on the way to the Stearns County Jail where he would be admitted as an inmate, Baxter-Jensen banged his head against the plexiglass of the squad and otherwise was agitated and assaultive.

14.     Upon arrival to the Stearns County Jail on November 13, 2010 at 12:20 am, Baxter-Jensen reported on a jail screening form that he was currently taking amitriptlene and celexa (two antidepressants), that he had been treated for emotional and/or mental health problems, and that he had previously tried to harm or kill himself.

15.     As required by the instructions in item 37 of the Jail's screening form, the answers Baxter-Jensen's provided upon this initial screening indicated "the subject need[ed] review."

16.     The "review" of Baxter-Jensen was not time-stamped or initialed and consisted only of inquiring whether he planned to harm himself as indicated by the handwritten note on the screening form that Baxter-Jensen "stated he would tell an ofc. if he felt like harming himself."

17.     No further review of Baxter-Jensen's serious mental health needs was conducted upon intake at the Jail or documented thereafter.

18.     Baxter-Jensen was assigned to cell 301 in the F housing unit, which was on the upper tier.

19.     At approximately 8:05 a.m. on November 14, 2010, Baxter-Jensen went to the desk in the F unit to check out a razor.

20.     Baxter-Jensen was issued razor #445 by correctional officer Mark G. Hill.

21.     Within approximately twenty-five minutes of Baxter-Jensen being issued a razor on November 14, 2010, correctional officer Hill conducted a well-being check of the F unit and found Baxter-Jensen face down on his bunk in his cell with massive amounts of blood on the floor between the toilet area, his bunk and on his person.

22.     Prior to this attempted suicide, Baxter-Jensen did not tell an officer that he felt like harming himself.

23.     Upon rolling Baxter-Jensen over, correctional officer Hill and other Stearns County personnel who came to assist observed a serious neck wound.  There were also wounds on the front of both of Baxter-Jensen's wrists, just above the wrist joints, which were oozing blood.

24.     Baxter-Jensen told responders: "I wish you would not have found me.  I just want to die."

25.     Stearns County Jail personnel applied pressure to Baxter-Jensen's wounds, checked his vitals and were able to solicit verbal responses from Baxter-Jensen, who stated that he wished he had not been found and that he wanted to die.

26.     A disassembled white razor and a razor blade, both issued by Stearns County, were found on the sink of Baxter-Jensen's cell.

27.     Both the blade and the disassembled razor were observed by Defendant Brandt in cell 301 of the F Housing unit, the scene of Baxter-Jensen's attempted suicide.

28.     Baxter-Jensen was brought by Gold Cross Emergency Service Personnel to St. Cloud Hospital at approximately 9:10 a.m. on November 14, 2010, where he underwent irrigation and debridement of his wounds.

29.     Baxter-Jensen was diagnosed as follows:  (1) Bilateral wrist lacerations; (2) neck laceration; and (3) suicide attempt.

30.     Medical personnel closed Baxter-Jensen's sixteen (16) centimeter neck wound with multiple sutures and twenty-six (26) staples.

31.     Upon information and belief, Baxter-Jensen's right wrist wound required six (6) sutures and his left wrist wound required twelve (12) sutures.

32.     Baxter-Jensen reported to St. Cloud Hospital personnel that he attempted suicide on November 14, 2010, a fact which was obvious to correctional and medical personnel alike.

33.     This serious attempt at suicide was performed in a very difficult, painful and unusual manner, especially for a person not under the influence of drugs or alcohol.

34.     Nine Stearns County personnel drafted reports on the November 14, 2010 suicide attempt by Baxter-Jensen, including Defendant Brandt.

35.     Upon information and belief, the November 14, 2010 suicide attempt by Baxter-Jensen was known by all correctional officers, correctional staff and Command and Control personnel of the Stearns County Sheriffs Department.

36.     Defendant Brandt's report noted he participated in cleaning up the cell, which contained massive amounts of Baxter-Jensen's blood.

37.     Defendant Brandt had actual knowledge of Baxter-Jensen's November 14, 2010 suicide attempt, the means by which the attempt was made and the seriousness of the attempt.

38.     The unique manner in which the November 14, 2010 suicide attempt occurred, especially when combined with his history of mental illness, mandated that all razors and other sharp or edged materials not be available to in Baxter-Jensen during his incarceration at the Stearns County Jail.

39.     Dr. Scott Houghton of St. Cloud Hospital stated that Baxter-Jensen required psychiatric evaluation after his recovery from the November 14, 2010 surgery.

40.     Baxter-Jensen was transported back from the St. Cloud Emergency Room to the Stearns County Jail on November 14, 2010, the same day as his suicide attempt. That required psychiatric evaluation was never completed at the Sterns County Jail or otherwise .

41.     Upon arriving back at the Stearns County Jail, Baxter-Jensen "verbally contracted for safety" stating to Stearns County jail staff that he would not hurt himself, something now incredible given his past serious attempt despite similar promises.

42.     Baxter-Jensen was taken at his word from this "verbal contract," along with other self-assessments and self-reports that he would not harm himself and that he was not suicidal despite actual knowledge of his serious mental health needs and recent suicide attempt, preceded by the same type of self-reports and verbal assurances, establishing that he had no insight as to his own mental health crisis.

43.     On November 15, 2010, Baxter-Jensen remained in the booking area in a suicide smock with safety blankets, where he denied thoughts, feelings or plans of suicide.

44.     On November 15, 2010, one day after his suicide attempt, a Licensed Clinical Social Worker followed up with Baxter-Jensen  and completed a suicide risk assessment. This risk assessment provided that Baxter-Jensen denied suicidal ideation and rated himself of a one (1) out of ten (10) with one being no risk and ten being imminent risk.

45.     On the November 15, 2010 suicide risk assessment, the social worker noted Baxter-Jensen had minimal and poor insight and that she doubted his level of disclosure.

46.     On November 16, 2010, during the first of three physician assessments, Baxter-Jensen was depressed and was to be kept on "close watch."

47.     After November 14, 2010, the individual defendants had actual knowledge – or knowledge that can be imputed because of its obviousness – that Baxter-Jensen had no insight into his mental health crisis and that his self-reports were wholly unreliable given the similar reports he made leading up the November 14, 2010 suicide attempt.

48.     On November 18, 2010, in a Physician Assessment Form, Doe defendant noted Baxter-Jensen was doing well on his "time out" and scheduled him to move back to a general housing pod, where he would remain on "close observation."

49.     On November 18, 2010, correctional officer Kathlene Minkel heard Baxter-Jensen state during a visit with his girlfriend that she could keep his things because he was not going to need them anymore.  Baxter-Jensen made additional comments that made correctional officer Minkel fear that Baxter-Jensen would again attempt suicide.

50.     On November 19, 2010, in a Medical Staff Narrative Note, defendant Byker related knowledge of Baxter-Jensen's conversation with his girlfriend, but noted Baxter-Jensen was "upset but not suicidal" and just wants to have his precautions changed.  As a result, Baxter-Jensen was allowed to have more personal items at the Stearns County Jail.

51.     On November 20, 2010,  in a Verbal Order Form, a Doe defendant, less than one week after the suicide attempt and a mere two days after expressed suicidal ideation, discontinued Baxter-Jensen's "suicide risk."  No reason or basis for the decision is disclosed on the form.

52.     On November 20, 2010 Baxter-Jensen remained on close observation and razor watch, but was allowed to live on the bottom tier of the F housing unit and to have a roommate.

53.     In a November 21, 2010 medical narrative, it is reported that Baxter-Jensen became more anxious from living in the general population.

54.     On November 22, 2010, the physician increased Baxter-Jensen's amitriptyline due to clinically observed depression.  Baxter-Jensen was also on "sleep watch."

55.     Nonetheless, "close observation" of Baxter-Jensen was discontinued eight days later on November 30, 2010.  The supervised shaving restriction remained in place.

56.     Letters Baxter-Jensen wrote to his family and his girlfriend during this period illustrate his acute mental health crisis and provide insight regarding his continuing plan to take his own life.

57.     Upon information and belief, these letters were turned in to and reviewed by jail staff.

58.     Further, in a phone call recorded by correctional authorities on December 3, 2010 to Baxter-Jensen's  girlfriend, Baxter-Jensen stated:  "I won't probably talk to you many more times, ever, here, you know" and "I just wish it could all end, you know…"

## DEFENDANTS' ACTUAL KNOWLEDGE OF SUICIDE RISK

59.     Some or all of the individual defendants knew that Baxter-Jensen banged his head and was agitated and assaultive upon arrest.

60.     Some or all of the individual defendants knew that Baxter-Jensen had received psychiatric treatment in the past.

61.     All of the individual defendants knew that Baxter-Jensen had attempted suicide before his admittance to the Stearns County Jail on November 13, 2010 and after his admittance despite a prior promise to report thoughts of self-harm.

62.     All of the individual defendants knew that Baxter-Jensen had a serious medical need in the form of severe mental illness during his time at the Stearns County Jail in November 2010.

63.     Some or all of the individual defendants knew that Baxter-Jensen had been prescribed antidepressant medication.

64.     The November 14, 2010 suicide attempt provided all of the individual defendants and Stearns County with actual knowledge of Baxter-Jensen's obvious serious medical needs, i.e., that he was in an acute mental health crisis and an imminent suicide risk.

65.     Some, and likely all, of the individual defendants and Stearns County knew the means by which the November 14, 2010 suicide attempt was executed, i.e. cutting his neck and wrists with a disassembled razor blade he obtained from correctional staff at the Stearns County Jail.

66.     Some or all of the individual defendants and Stearns County knew of Baxter-Jensen's continued suicidal ideation from the comments to his girlfriend, which occurred after the suicide attempt and within this same period of confinement.

67.     Some or all of the individual defendants and Stearns County knew of Baxter-Jensen's continued suicidal ideation from the letters to his girlfriend and to Plaintiff, which also occurred after the suicide attempt and within this same period of confinement.

68.     Some or all of the individual defendants and Stearns County knew that Baxter-Jensen remained on razor watch and that he was not to possess a razor without being monitored by jail personnel.

69.     Some or all of the individual defendants and Stearns County knew that Baxter-Jensen's verbal assurances not to harm himself and his self-reports regarding suicidal ideation were wholly unreliable and demonstrably inaccurate given the circumstances leading up to his November 14, 2010 suicide attempt in their custody.

70.     Baxter-Jensen's mental illness, his previous suicide attempt within this same period of confinement, and his continued suicidal ideations illustrated Baxter-Jensen remained an objectively obvious suicide risk while he was an inmate at the Stearns County Jail and Defendants knew or must have known of the substantial risk of serious harm that existed.

## THE SUICIDE

71.     On December 4, 2010, Defendant Brandt was assigned to West Housing, including units G and F.

72.     Defendant Brandt began razor issue at approximately 8:05 a.m. on December 4, 2010.

73.     Multiple razors were issued to inmates in unit F of West Housing, including two to Baxter-Jensen's roommate, Darrel Twombly, identified as razors #645 and #652, despite the fact that Baxter-Jensen remained on razor watch.

74.     At approximately 8:09 a.m., Darrel Twombly brought razors #645 and #652 back to his cell, 201, where Baxter-Jensen was waiting.

11

75.     Darrel Twombly's incarceration in the Stearns County Jail began on December 2, 2010.  He was never made aware that Baxter-Jensen was on razor watch.

76.     Approximately thirty (30) seconds later, Baxter-Jensen left his cell for the open shower in housing unit F.

77.     Approximately two minutes after Baxter-Jensen left his cell, Defendant Brandt checked cell 201, which only contained inmate Twombly.

78.     At approximately 8:11:50 a.m., Defendant Brandt knocked on the shower. Defendant Brandt claims he received a verbal response.

79.     For the next nine minutes, the inmates of West Housing unit F became visibly anxious.  They can be seen on surveillance video pacing around with their towels and eventually crowding around the staff office area.

80.     At approximately 8:20:31, an inmate knocked on the unit F shower door. Immediately afterwards, the same inmate can be seen getting Defendant Brandt's attention.

81.     Defendant Brandt walked back towards the inmate and the shower. Defendant Brandt opened the door and observed Baxter-Jensen lying face down in a puddle of blood with his head near the drain.

82.     Pieces of white disassembled razor #652, one of the razors Defendant Brant assigned to Baxter-Jensen's roommate, were also found on the floor of the F unit shower near Baxter-Jensen.

83.     Defendant Brandt used his shoulder radio and then walked away while Baxter-Jensen remained in the shower.

84.     Defendant Brandt did not check Baxter-Jensen for a pulse or for respirations.

12

85.     Defendant Brandt did not immediately provide emergency medical assistance to Baxter-Jensen.

86.     Approximately one minute later, multiple Stearns County personnel arrived in the F unit, and Baxter-Jensen was finally pulled out of the shower.  He was rolled onto his back and resuscitation efforts were started.

87.     Ambulance personnel arrived on the scene at approximately 8:30 a.m.

88.     Baxter-Jensen was pronounced dead at approximately 9:10 a.m. on December 4, 2010, approximately one hour after the razor entered cell 201.

89.     Baxter-Jensen used one of the razors Defendant Brandt assigned to Baxter-Jensen's roommate, Darrell Twombly, to create a self-inflicted incised wound to his neck, which measured 9.5 inches in length.

90.     The wound tracked from left to right and covered the entire front surface of Baxter-Jensen's neck.

91.     Baxter-Jensen's neck wound was 1 inch deep on the left side and 3/8ths of an inch deep on the right side.  The wound proceeded into the skin and extended into the soft tissue, superficial muscles, external jugular veins and the cricothyroid ligament.

92.     Dr. Kelly Mills, the Principal Assistant Medical Examiner of Ramsey County Medical Examiner's Office, determined Baxter-Jensen's cause of death was exsanguination due to the incised wound to the neck.  The manner of death was suicide.

93.     Baxter-Jensen's toxicology screen was positive only for Citalopram, i.e., Celexa, and Amitriptyline and Nortriptyline, all of which are medications that treat depression.

94.     Throughout his confinement at the Stearns County Jail, Baxter-Jensen displayed obvious signs that he remained a serious suicide risk.

95.     The Defendants failed to take precautions to ensure razors could not and would not be accessed by Baxter-Jensen unless he was supervised by correctional staff.

96.     Despite actual knowledge of Baxter-Jensen's November 14, 2010 suicide attempt and the continued serious risk of suicide, Defendant Brandt ignored Baxter-Jensen's serious medical needs and failed to keep razors out of his possession

97.     Additionally, Defendants did not alert Baxter-Jensen's roommate, who had just come to Stearns County Jail, of his razor restrictions and the importance of such restrictions.

## COUNT ONE

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS
### *Plaintiff v. Defendant Travis Brandt*

98.     Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

99.     Severe mental illness and suicidal ideation are serious medical needs.

100.    Defendant Brandt had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

101.    Defendant Brandt, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and his serious risk of suicide

during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

102.    Defendant Brandt, under the color of state law, knew of and disregarded an obvious and serious risk to Baxter-Jensen's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

103.    Defendant Brandt subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendant Brandt's actions.

104.    Baxter-Jensen died as a direct and proximate result of Defendant Brandt's acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

105.    Punitive damages are available against Defendant Brandt and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

106.    Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT TWO

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS
### *Plaintiff v. Elaine Byker*

107.    Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

108.    Severe mental illness and suicidal ideation are serious medical needs.

109.    Defendant Byker had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

110.    Defendant Byker, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

111.    Defendant Byker, under the color of state law, knew of and disregarded an obvious and serious risk to Baxter-Jensen's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

112.    Defendant Byker subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendant Byker's actions.

113.    Baxter-Jensen died as a direct and proximate result of Defendant Byker's acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

114.    Punitive damages are available against Defendant Byker and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

115.    Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT THREE

### CIVIL RIGHTS VIOLATIONS
*Plaintiff v. Supervisory Defendants John Does 1-2*

116.    Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

117.    Severe mental illness and suicidal ideation are serious medical needs.

118.    Defendants John Does 1-2 had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

119.    Defendants, as supervisory employees, with callous or reckless indifference to the rights of inmates, failed to properly supervise, instruct, supervise, and train correctional and medical staff in the recognition of inmates with serious mental health needs, inmates who are suicidal and in the prevention of suicide in correctional facilities.

120.    Defendants John Does 1-2, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

121.    Defendants John Does 1-2 subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendants John Does 1-2 actions.

122.    Baxter-Jensen died as a direct and proximate result of Defendants John Does 1-2 acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

123.    Punitive damages are available against Defendants John Does 1-2 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

124.    Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT FOUR

### CIVIL RIGHTS VIOLATIONS
*Plaintiff v. Correctional Defendants John Does 3-6*

125.    Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

126.    Severe mental illness and suicidal ideation are serious medical needs.

127.    Defendants John Does 3-6 had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

128.    Defendants John Does 3-6, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

18

129.   Defendants John Does 3-6, under the color of state law, knew of and disregarded an obvious and serious risk to Baxter-Jensen's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

130.   Defendants John Does 3-6 subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendants John Does 3-6 actions.

131.   Baxter-Jensen died as a direct and proximate result of Defendants John Does 3-6 acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

132.   Punitive damages are available against Defendant John Does 3-6 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

133.   Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT FIVE

### CIVIL RIGHTS VIOLATIONS
### *Plaintiff v. Medical Defendants John Does 7-9*

134.   Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

135.   Severe mental illness and suicidal ideation are serious medical needs.

136.    Defendants John Does 7-9 had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

137.    Defendants John Does 7-9, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

138.    Defendants John Does 7-9, under the color of state law, knew of and disregarded an obvious and serious risk to Baxter-Jensen's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

139.    Defendants John Does 7-9 subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendants John Does 7-9 actions.

140.    Baxter-Jensen died as a direct and proximate result of Defendants John Does 7-9 acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

141.    Punitive damages are available against Defendant John Does 7-9 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

142.     Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT SIX

### CIVIL RIGHTS VIOLATIONS
### MONELL V. DEP'T OF SOCIAL SERVICES
### *Plaintiff v. Stearns County*

143.     Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

144.     Before December 4, 2010, Stearns County, with deliberate indifference to the rights of inmates at the Stearns County Jail, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its correctional officers, including Defendant Brandt, of failing to provide for the safety and general well-being of inmates and failing to protect inmates from themselves and/or risks of suicide.

145.     Baxter-Jensen's wrongful death and the violation of his civil rights was directly and proximately caused by the aforementioned acts and omissions and by Stearns County's customs, patterns, and/or practices, and Stearns County is thereby liable in an amount as yet to be determined.

146.     Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

21

## COUNT SEVEN

### FAILURE TO TRAIN UNDER
### CITY OF CANTON V. HARRIS
#### *Plaintiff v. Stearns County*

147.    Plaintiff realleges and incorporates by reference herein each and every

allegation contained in each paragraph above as if fully set forth herein.

148.    Stearns County, with deliberate indifference to inmates at the Stearns County

Jail, failed to properly train correctional and medical staff and failed to adopt, implement or

require adherence to appropriate policies to provide timely and appropriate care for inmates

with serious mental illness.

149.    Defendant Stearns County, by such conduct, demonstrated deliberate

indifference and a protracted failure to care for the safety of Baxter-Jensen who had an

obvious and serious medical need in the form of a severe mental health crisis coupled with

prior suicidal ideation and a prior suicide attempt at the Stearns County Jail.

150.    Baxter-Jensen's wrongful death and the violation of his civil rights was directly

and proximately caused by the aforementioned acts and omissions and by Stearns County's

customs, patterns, and/or practices, and Stearns County is thereby liable in an amount as yet

to be determined.

151.    Plaintiff is entitled to recovery of her costs, including reasonable attorney fees,

under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kathleen C. Baxter-Knutson as trustee for the next-of-kin

of Kyle Allan Baxter-Jensen prays for judgment against Defendants as follows:

1.     That this Court find that the Defendants committed acts and omissions constituting violations of the Eighth and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983;

2.     As to Count I, a money judgment against Defendant Travis Brandt for compensatory and punitive damages in an amount to be determined by the jury,  together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

3.     As to Count II, a money judgment against Defendant Elaine Byker for compensatory and punitive damages in an amount to be determined by the jury,  together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

4.     As to Count III, a money judgment against Defendants John Doe 1-2 for compensatory and punitive damages in an amount to be determined by the jury,  together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

5.     As to Count IV, a money judgment against Defendants John Doe 3-6 for compensatory and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

6.     As to Count V, a money judgment against Defendants John Doe 7-9 for compensatory and punitive damages in to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

7.     As to Count VI, a money judgment against Stearns County for compensatory damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

8.     As to Count VII, a money judgment against Stearns County for compensatory damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

9.     For an order mandating changes in the policies and procedures of the Stearns County Jail requiring, among other things, policy/training measures in the recognition of serious mental illness and suicidal ideation in correctional facilities and in the prevention of suicide among inmates in correctional facilities; and

10.    For such other and further relief as this Court may deem just and equitable.

GASKINS BENNETT BIRRELL SCHUPP L.L.P.

Date: __2/9/15__

Robert Bennett, #6713
Andrew J. Noel, #322118
Kathryn H. Bennett, #0392087
333 South Seventh Street, #3000
Minneapolis, MN 55402
Telephone: 612-333-9500
rbennett@gaskinsbennett.com
anoel@gaskinsbennett.com
kbennett@gaskinsbennett.com
Attorneys for Plaintiffs

24