UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kathleen C. Baxter-Knutson,
as trustee for the next-of-kin of
Kyle Allan Baxter-Jensen,

        Plaintiff,

vs.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-3796 ADM/LIB

Travis Brandt, Elaine Byker,
Stearns County, and John Does 1–9,

        Defendants.

_____

Robert Bennett, Esq., Gaskins, Bennett, Birrell, Schupp, LLP, Minneapolis, MN, on behalf of Plaintiff.

Melissa Dosick Riethof, Esq., Meagher & Geer, PLLP, Minneapolis, MN, on behalf of Defendants Elaine Byker and John Does 7–9.

_____

## I. INTRODUCTION

On May 20, 2015, the undersigned United States District Judge heard oral argument on Defendants Elaine Byker and John Does 7–9's (collectively, "Defendants") Motion for Summary Judgment [Docket No. 22].[1] Plaintiff Kathleen C. Baxter-Knutson ("Baxter-Knutson") opposes the Motion. For the reasons set forth below, Defendants' Motion is denied.

## II. BACKGROUND

On November 13, 2010, Kyle Allan Baxter-Jensen ("Baxter-Jensen") was arrested for driving while intoxicated, driving after revocation, and driving without proof of insurance. Am.

---

[1] The remaining Defendants do not take a position on this Motion.

Compl. [Docket No. 8] ¶ 12.² When Baxter-Jensen arrived at the Stearns County Jail, he reported on a jail screening form that he was taking two antidepressants. Id. ¶ 14. A handwritten note was added to Baxter-Jensen's screening form that said "he would tell an ofc. if he felt like harming himself." Id. ¶ 16.

The morning of November 14, 2010, Baxter-Jensen checked out a razor from a correctional officer. Id. ¶¶ 19, 20. Approximately twenty-five minutes later, the correctional officer discovered Baxter-Jensen face down on his bunk with a large amount of blood in his cell, a serious neck wound, as well as wounds on each wrist. Id. ¶¶ 21, 23. Baxter-Jensen told responders that he wished he had not been found and that he wanted to die. Id. ¶ 25.

Baxter-Jensen was treated at St. Cloud Hospital where he received twenty-six staples and multiple sutures in his neck, as well as six sutures in his left wrist and twelve sutures in his right wrist. Id. ¶¶ 28, 30, 31. Baxter-Jensen reported to hospital personnel that his wounds were the result of a suicide attempt. Id. ¶ 32.

Baxter-Jensen returned to the Stearns County Jail that very same day. Id. ¶ 41. He told jail staff that he would not hurt himself again. Id. The following day, Baxter-Jensen completed a suicide risk assessment with a clinical social worker. Id. ¶ 44. He denied suicidal ideation and rated himself as not being a risk for further suicide attempts. Id. The social worker who administered the assessment doubted the accuracy of Baxter-Jensen's self-rating. Id. ¶ 45.

The next day, November 16, a physician conducted a mental health assessment of Baxter-Jensen. Id. ¶ 48. The assessment concluded Baxter-Jensen needed to be on "close observation"

---

² The factual basis is drawn exclusively from the Amended Complaint. Defendants do not offer any Declarations or Affidavits that address the facts underlying this action.

due to his depression.  Id.  Two days later, a correctional officer heard Baxter-Jensen tell his girlfriend that she could keep his things because he was not going to need them anymore.  Id. ¶ 49.  The next day, Elaine Byker, a member of the medical staff, noted that Baxter-Jensen was "upset but not suicidal" and just wanted to have his precautions changed.  Id. ¶ 50.

On November 20, 2010, a Doe defendant discontinued Baxter-Jensen's "suicide risk" classification.  Id. ¶ 51.  Baxter-Jensen, however, remained on "close observation" and "razor watch."  Id. ¶ 52.  Baxter-Jensen was moved to a cell with a roommate.  Id.  Baxter-Jensen's roommate was not advised of the razor restriction.  Id.  On November 30, 2010, Baxter-Jensen's "close observation" was discontinued, though his razor restriction remained in place.  Id. ¶ 55.  During a phone call on December 3, 2010, Baxter-Jensen told his girlfriend, "I won't probably talk to you many more times . . . ," and "I just wish it could all end, you know . . . ."  Id. ¶ 58.

On December 4, 2010, at approximately 8:05 a.m., a correctional officer issued two razors to Baxter-Jensen's roommate, who brought them to his cell.  Id. ¶¶ 73, 74.  Shortly thereafter, Baxter-Jensen left the cell and entered the shower.  Id. ¶ 76.  At approximately 8:12 a.m., a correctional officer knocked on Baxter-Jensen's shower door and received a verbal response.  Id. ¶ 78.  An inmate knocked on Baxter-Jensen's shower door at approximately 8:20 a.m., then quickly got the correctional officer's attention.  Id. ¶ 80.  The correctional officer discovered Baxter-Jensen in the shower, lying face-down in a puddle of blood.  Id. ¶ 81.  Pieces of a disassembled razor were found on the floor of the shower, near Baxter-Jensen.  Id. ¶ 82.  Resuscitation attempts failed and Baxter-Jensen was pronounced dead at approximately 9:10 a.m. that same morning.  Id. ¶ 88.  The cause of death was a self-inflicted neck wound.  Id. ¶¶ 89, 92.

On July 21, 2014, Baxter-Jensen's mother, Baxter-Knutson, was appointed trustee for the next-of-kin of Baxter-Jensen. Id. ¶ 3. On September 24, 2014, three years and 294 days after Baxter-Jensen's death, Baxter-Knutson initiated this lawsuit. Seeking recovery of damages under 42 U.S.C. § 1983, Baxter-Knutson alleges that the Defendants were deliberately indifferent to Baxter-Jensen's medical needs in violation of the Eighth and Fourteenth Amendments. Id. ¶¶ 107–115, 134–142.

## III. DISCUSSION

### A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The United States Supreme Court, in construing Federal Rule 56(c), stated in Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134 (8th Cir. 1999). However, the nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. Standing

Defendants contend that Minnesota's wrongful death statute is the sole basis for Baxter-Knutson's standing to bring her § 1983 claims on Baxter-Jensen's behalf. This statute contains a

4

three-year limitations period, which Defendants argue bars the only cause of action for which Baxter-Knutson has standing to sue. In order to evaluate the statute of limitations defense, the Court will first examine the question of standing.

Section 1983 provides a federal cause of action for an individual against persons who, acting under color of state law, deprived that individual of rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. It does not create substantive rights but merely provides an avenue for vindication of rights provided elsewhere. Tarsney v. O'Keefe, 225 F.3d 929, 939 (8th Cir. 2000) (citing City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985)).

While § 1983 does not contain a provision governing standing, § 1988 provides a framework for "borrowing" from state law to fill gaps in some federal statutes, including § 1983.

> [W]hen federal law is 'deficient' with regard to 'suitable remedies' in federal civil rights actions, federal courts are to be governed by 'the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of [the] civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States.'

Robertson v. Wegmann, 436 U.S. 584, 587 (1978) (citing 42 U.S.C. § 1988); see also Botefur v. City of Eagle Point, Or., 7 F.3d 152, 155 (9th Cir. 1993) (noting that "borrowing" of local law is appropriate where it is "necessary to effectuate the federal policies underlying a federal statutory scheme"); United States v. Morvant, 843 F. Supp. 1092, 1095 (E.D. La. 1994) (applying the law of the forum state when a federal civil rights statute was silent as to whether the government had standing to seek damages).

In Minnesota, a cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in Minn. Stat. § 573.02. Minn. Stat. § 573.02 provides that the trustee "may maintain an action therefore if the decedent might have

5

maintained an action, had the decedent lived." Minn. Stat. § 573.02, subd. 1. Defendants assert that this is the only Minnesota statute that can be "borrowed" to support Baxter-Knutson's standing to bring this suit under § 1983. Baxter-Knutson does not dispute this assertion. Since Baxter-Knutson has been appointed the trustee for the next-of-kin of Baxter-Jensen, she has standing to bring this suit under § 1983.

**C. Statute of Limitations**

Defendants argue that summary judgment is warranted because the three-year limitations period for claims arising under Minn. Stat. § 573.02 has expired. Defendants contend that because § 1988 requires applying the most analogous state statute, and since Minn. Stat. § 573.02 is the statute most analogous to Baxter-Knutson's § 1983 claims, it controls for statute of limitations purposes. Baxter-Knutson counters that the Court should apply the six-year limitations period from Minn. Stat. § 541.05, subd. 1(5), Minnesota's "residual" personal injury statute of limitations. Baxter-Knutson asserts that Supreme Court precedent establishes that § 1983 claims sound in personal injury for statute of limitations purposes and thus Minn. Stat. § 541.05, subd. 1(5) controls the limitations period.

In <u>Robertson v. Wegman</u>, 436 U.S. 584, 595 (1978), the Supreme Court applied § 1988's "borrowing" mandate to determine that a federal district court in Louisiana should have applied Louisiana state law to decide whether a plaintiff's § 1983 claims survived his death. At that time, Louisiana law provided that after the plaintiff's death, only a spouse, child, parent, or sibling had standing to bring the asserted claim. <u>Id.</u> at 587. Because no living parties bore any of these relationships to the decedent, state law would have foreclosed his action. <u>Id.</u> at 587–88. The lower courts, concluding that abatement was inconsistent with federal law, thus did not

6

apply state law, creating instead "a federal common law of survival in civil rights actions." Id. at 587. The Supreme Court reversed, rejecting the proposition that a state statute is inconsistent with federal law "merely because the statute causes the plaintiff to lose the litigation." Id. at 593. The Court instead determined whether the state law was inconsistent with the policies underlying § 1983, "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." Id. at 590–91. Since a deceased party is unable to be compensated and since most actions in Louisiana survive death, the Court concluded abatement was consistent in this situation. Id. at 592. Thus, the Court held, creating a federal common law rule was error.

Some seven years later, in Wilson v. Garcia, 471 U.S. 261, 262 (1985), the Supreme Court addressed the role of § 1988 in determining the statute of limitations for § 1983 claims. The Court noted that "[a]lmost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations." Id. at 272–73. Thus, § 1988's directive to borrow the most analogous state law claim was at odds with "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation" that favored a simple approach to determining the statute of limitations for all § 1983 claims. Id. at 275. As a result, the Court construed § 1988 as "a directive to select, in each State, the *one* most appropriate statute of limitations for *all* § 1983 claims." Id. (emphases added). The Court then concluded that "§ 1983 claims are best characterized as personal injury actions." Id. at 280.

In 1989, the Supreme Court in Owens v. Okure, 488 U.S. 235, 241 (1989), resolved the question of which personal injury statute of limitations should apply in states that have multiple

7

statutes of limitations for personal injury actions. The Court in Owens held that a state's "general or residual statute for personal injury actions" is the proper statute of limitations for all § 1983 claims, concluding that this approach reduces the "risk of confusion or unpredictability" and avoids "enormous practical disadvantages." Id. at 248, 250–51. The Owens opinion concludes with, "[o]ur decision in Wilson promised to end the confusion over what statute of limitations to apply to § 1983 actions; with today's decision, we hope to fulfill Wilson's promise." 488 U.S. at 251.

Nevertheless, Defendants assert that Wilson and Owens do not apply here to set the statute of limitations for this wrongful death suit under § 1983. There is no support for this notion in the text of either opinion.[3] Wilson explicitly extends its rule to "all § 1983 claims," and Owens uses this same language in summarizing Wilson's holding. Wilson, 471 U.S. at 275; Owens, 488 U.S. at 240. When a civil rights violation leads to death, claims sounding in wrongful death, personal injury on behalf of the decedent, or both, may be asserted. Maintaining different statutes of limitations for these types of actions would lead to the lack of predictability and excess litigation that Wilson and Owens cautioned against. Indeed, the Wilson Court specifically sought to avoid the difficulties associated with different statutes of limitations for different causes of action within the same § 1983 action. See 471 U.S. at 274–75 ("[U]nder [the

---

[3] Defendants attempt to support their position by citing cases in which a state statute governed whether a plaintiff had standing to bring a § 1983 claim on behalf of a deceased individual. See, e.g. Andrews v. Neer, 253 F.3d 1052, 1057 (8th Cir. 2001) (holding that only the personal representative of the decedent has standing to bring a § 1983 claim in Missouri). On the issue of standing, the Eighth Circuit followed the traditional rule by filling a gap in § 1983 with a provision from the most analogous cause of action in the forum state. This was the appropriate course of action because the Supreme Court has not directed deviation from the traditional rule on the issue of standing. The Supreme Court *has* dictated a different course of action when statute of limitations is at issue.

case-by-case] approach . . . multiple periods of limitations would often apply to the same case. There is no reason to believe that Congress would have sanctioned this interpretation of its statute.").

Subsequent Eighth Circuit cases further support the notion that Wilson and Owens extended their statute of limitations reasoning to wrongful death suits. See, e.g. Ketchum v. City of West Memphis, Ark., 974 F.2d 81, 82 (8th Cir. 1992) (noting that since Wilson, the court had held many times that the three-year general personal injury statute of limitations in Arkansas "governs § 1983 actions brought in that state."); Williams v. Bradshaw, 459 F.3d 846, 847 (8th Cir. 2006) (applying the Arkansas general personal injury statute of limitations to a wrongful death claim under § 1983). Other circuits have taken the same position on the scope of Wilson and Owens, drawing no distinction between § 1983 claims for wrongful death and other § 1983 claims. See Hanner v. State of Miss., 833 F.2d 55, 56 (5th Cir. 1987) (applying Wilson's holding to a § 1983 wrongful death claim); Miles v. Vanderburgh Cnty. Jail, 335 F. App'x 633, 635 (7th Cir. 2009) (noting in a § 1983 wrongful death case that "§ 1983—which does not have its own statute of limitations—incorporates the forum state's limitations period for personal-injury claims . . . .").[4]

Based on the language of Wilson and Owens and the subsequent case law, a state's

---

[4] Defendants cite Carpenter v. Williams Cnty., N.D. and McKenney v. Greene Acres Manor for the sweeping proposition that where a §1983 claim on behalf of a deceased individual was governed by the general or residual personal injury statute of limitations, it was due to the state survival statute. 618 F. Supp. 1293, 1293 (D.N.D. 1985); 650 A.2d 699 (Me. 1994). The language of the opinions, however, does not support Defendants' position. Carpenter and McKenney did not rely on, nor even mention the respective state survival statutes. Tellingly, both courts unequivocally stated that Wilson's rule applies to all § 1983 claims. Carpenter, 618 F. Supp. at 1293–94; McKenney, 650 A.2d at 701.

9

"general or residual statute [of limitations] for personal injury actions" applies to § 1983 claims brought in that state. Owens, 488 U.S. at 250. The Eighth Circuit has recognized Minn. Stat. § 541.05, subd. 1(5) as the residual personal injury statute of limitations, which governs the limitations period for § 1983 claims in Minnesota. Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 618 n.3 (8th Cir. 1995). Minn. Stat. § 541.05, subd. 1(5) sets forth a six-year limitations period. Baxter-Knutson brought this suit less than six years after Baxter-Jensen's death. The suit is therefore timely. Defendants' Motion for Summary Judgment on the ground of being barred by a statute of limitation is denied.

**D. Expert Affidavit Requirement**

Defendants also contend that summary judgment is proper because Baxter-Knutson failed to timely supply the professional evaluation affidavits required by Minn. Stat. § 145.682. Minn. Stat. § 145.682 requires dismissal of a medical malpractice claim if the affidavits are not supplied within the time limits. Baxter-Knutson counters that Minn. Stat. § 145.682 is inapplicable here because she is not asserting medical malpractice claims.

Defendants correctly note that, in Minnesota, medical malpractice suits are subject to the requirements of Minn. Stat. § 145.682. Oslund v. United States, 701 F. Supp. 710, 714 (D. Minn. 1988). Baxter-Knutson, however, has not asserted any medical malpractice claims. Her claims against Defendants are for civil rights and constitutional violations. See Samuel v. Carroll, 505 F. Supp. 2d 256, 264 (D. Del. 2007) (noting that §1983 claims for deliberate indifference to medical needs are not medical malpractice claims). Deliberate indifference to a prisoner's medical needs is prohibited by the Eighth Amendment and is actionable under § 1983. Id. at 104–05.

Claims under § 1983 are federal law claims, not subject to state statutes such as Minn. Stat. § 145.682 unless directed by federal law. There is no federal law directing Baxter-Knutson to comply with the terms of Minn. Stat. § 145.682 when bringing a § 1983 claim. Defendants' Motion for summary judgment on this ground is also denied.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 22] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery  
ANN D. MONTGOMERY  
U.S. DISTRICT JUDGE

Dated:  August 3, 2015.