Kathleen C. Baxter-Knutson as trustee for
the-next-of kin of Kyle Allan Baxter-Jensen,

        Plaintiff,

v.

Travis Brandt, acting in his individual capacity
as a Stearns County correctional officer,
Elaine Byker, acting in her individual capacity
as medical staff in the Stearns County Jail, Mary
Millicent, acting in her individual capacity as medical
staff in the Stearns County Jail, Todd
Leonard, MD, acting in his individual and official
capacity as the Responsible Health Authority in
the Stearns County Jail & as the sole owner of
MEnD, MEnD Correctional Care, PLLC, John
Does 1-2, acting in their individual capacities
as supervisory Stearns County officers,
and Stearns County,

        Defendants.

Case No. 14-CV-03796

**SECOND AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

   For her Complaint, Kathleen C. Baxter-Knutson as trustee for the next-of-kin of

Kyle Allan Baxter-Jensen states and alleges as follows:

   1.  This is an action for money damages for the wrongful death of Kyle Allan

Baxter-Jensen ("Baxter-Jensen") resulting from the deliberate indifference of Stearns County

and the individual Defendants who are jail correctional and medical employees of Stearns

County acting in their individual and/or official capacities at the Stearns County Jail from November 13, 2010 until December 4, 2010, the date Baxter-Jensen committed suicide.

2.　　The deliberate indifference of Stearns County, MEnD Correctional Care, and the individual jail correctional and medical Defendants proximately caused Baxter-Jensen's suffering and eventual death by suicide, thereby violating his well-settled federal civil rights while acting under the color of state law.

3.　　Kathleen C. Baxter-Knutson ("Plaintiff") was appointed as Trustee for the Next-of-Kin of Baxter-Jensen on July 21, 2014 by Hennepin County District Court Judge Kathleen Sheehy. A copy of that Order and the Oath and Consent of Trustee are attached hereto as Exhibit A.

4.　　Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Eighth and Fourteenth Amendments to the Constitution, and 28 U.S.C. §§ 1331 and 1343(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this cause of action.

5.　　Baxter-Jensen was at all times material herein a citizen of the United States and a resident of St. Cloud, Minnesota. He was born on June 4, 1982, making him 28-years-old at the time of his death. He suffered from serious mental illness, including anxiety and depression and, prior to this incarceration, he had attempted suicide.

6.　　Defendant Stearns County is a "public corporation," which can be sued under Minnesota Statute § 373.01(1). Stearns County is, and at all relevant times was, a political entity charged with control and supervision of all personnel of the Stearns County Jail.

7.     Defendant Travis Brandt ("Brandt") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as a correctional officer at the Stearns County Jail.  Brandt is sued in his individual capacity.

8.     Defendant MEnD Correctional Care, PLLC ("MEnD") is a limited liability company incorporated under the laws of Minnesota with its principal place of business in the City of Waite Park, State of Minnesota.  MEnD was at all times material herein acting under color of state law as a company that contracted to provide medical care to inmates at the Stearns County Jail.

9.     Defendant Stearns County contracted with MEnD on July 13, 2010 to provide the health care services at Stearns County Jail during all times material hereto.  The individual jail medical employee Defendants were selected by MEnd and its sole owner, Defendant Todd Leonard, to provide medical and mental health care at Stearns County Jail under the County's contractual relationship with MEnD.

10.     Defendant Todd Leonard, MD ("Leonard") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law.  During the time period in question, Defendant Leonard was the Responsible Health Authority ("RHA") for Stearns County Jail, serving as both the Jail's medical director and the physician that was to provide general and urgent care to Stearns County detainees and inmates under the County's contract with MEnD.  Additionally, Leonard as the owner of MEnD and the RHA was a policymaker and was specifically involved with the Stearns County Jail's Suicide Prevention Plan.  Leonard is sued in his individual, supervisory and official capacity.

3

11. Defendant Elaine Byker ("Byker") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as a jail medical staff employee. Byker is sued in her individual capacity as a registered nurse ("RN") employed by MEnD and Stearns County to provide medical services at the Stearns County Jail.

12. Defendant Mary Millicent ("Millicent") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as a jail medical staff employee. Millicent is sued in her individual capacity as a licensed clinical social worker ("LICSW") employed by MEnD and Stearns County to provide medical and mental health services at the Stearns County Jail.

13. Upon information and belief, Defendants John Doe 1-2 were at all times material herein, citizens of the United States, residents of the State of Minnesota, and acting under color of state law as supervisors of the Stearns County Jail's correctional staff. Does 1-2 are sued in their individual capacities.

## THE INITIAL SERIOUS SUICIDE ATTEMPT

14. On November 13, 2010, Baxter-Jensen was arrested for driving while intoxicated, driving after revocation and no proof of insurance.

15. While in the squad car on the way to the Stearns County Jail where he would be admitted as an inmate, Baxter-Jensen banged his head against the plexiglass of the squad and otherwise was agitated and assaultive.

16. Upon arrival to the Stearns County Jail on November 13, 2010 at 12:20 am, Baxter-Jensen reported on a jail screening form that he was currently taking amitriptyline and

4

celexa (two antidepressants), that he had been treated for emotional and/or mental health problems, and that he had previously tried to harm or kill himself.

17.     As required by the instructions in item 37 of the Jail's screening form and Stearns County Jail policy, the answers Baxter-Jensen provided upon this initial screening indicated "the subject need[ed] review."

18.     Such review is imperative because, as the Stearns County suicide prevention plan warns, "[w]hile inmates may become suicidal at any point during their stay, high risk periods include the time immediately upon admission to the facility..."

19.     The "review" of Baxter-Jensen was not time-stamped or initialed and consisted only of inquiring whether he planned to harm himself as indicated by the handwritten note on the screening form that Baxter-Jensen "stated he would tell an ofc. if he felt like harming himself."

20.     Further, the versions of screen forms produced are inconsistent, have been altered and contain different dates and markings.

21.     No further review of Baxter-Jensen's serious mental health needs was conducted upon intake at the Jail or documented thereafter.

22.     Under the Admission Health Screening Policy for Stearns County Jail, "[a]ll medical-screening tools **shall** be forwarded to and reviewed by nursing staff for follow up on medical or mental health concerns." The policy permits the booking officer to complete the Medical Screening Admissions Form, but directs that "[a]ll inmates who respond positively to suicide risk questions (questions 37 or 38) will be referred to the Shift

Supervisor and/or the nurse **immediately**." Then "[t]he shift supervisor will note on the classification form any special accommodations that have been made for the inmate."

23. There is no Stearns County or MEnD medical record showing that the nursing or other staff followed up with Baxter-Jensen regarding his mental health after the screening but before he cut his own throat and wrists.

24. There is nothing flagged on Baxter-Jensen's Inmate Identification Card or his Initial Classification Worksheet regarding his mental health.

25. Contrary to the Stearns County Jail Policy that required Baxter-Jensen to be housed in an area with increased supervision because of his answers to items 37 and 38 on the screen form and due to his state of intoxication upon arrival, Baxter-Jensen was assigned to cell 301 in the F housing unit, which was in general population and on the upper tier.

26. Defendants deliberately ignored all of the warnings Baxter-Jensen provided to them upon arrival to the Stearns County Jail regarding his suicide risk, including his answers to the screening form regarding his current prescriptions for antidepressants, that he was intoxicated upon arrival, that he had been seen at the hospital for mental health problems in the past, and that he had previously tried to harm or kill himself prior to his incarceration on November 14, 2010. These warnings mandated further evaluation of Baxter-Jensen's mental health, immediately, but the evaluation did not occur prior to Baxter-Jensen cutting his own throat and wrists.

27. His antidepressant medication was put on hold due to his intoxicated state upon arrival to the Stearns County Jail. There is no legible or coherent medical

administration document or charting actually confirming that the amyitriptyline and celexa were provided to Baxter-Jensen before 8:00 a.m. on November 14, 2010.

28.     At approximately 8:05 a.m. on November 14, 2010, Baxter-Jensen went to the desk in the F unit to check out a razor.

29.     Baxter-Jensen was issued razor #445 by correctional officer Mark G. Hill.

30.     Within approximately twenty-five minutes of Baxter-Jensen being issued a razor on November 14, 2010, correctional officer Hill conducted a well-being check of the F unit and found Baxter-Jensen face down on his bunk in his cell with massive amounts of blood on the floor between the toilet area, his bunk and on his person.

31.     Prior to this attempted suicide, Baxter-Jensen did not tell an officer that he felt like harming himself.

32.     Upon rolling Baxter-Jensen over, correctional officer Hill and other Stearns County personnel who came to assist observed a serious neck wound.  There were also wounds on the front of both of Baxter-Jensen's wrists, just above the wrist joints, which were oozing blood.

33.     Baxter-Jensen told responders: "I wish you would not have found me.  I just want to die."

34.     Stearns County Jail personnel applied pressure to Baxter-Jensen's wounds, checked his vitals and were able to solicit verbal responses from Baxter-Jensen, who stated that he wished he had not been found and that he wanted to die.

35.     A disassembled white razor and a razor blade, both issued by Stearns County, were found on the sink of Baxter-Jensen's cell.

36.     Both the blade and the disassembled razor were observed by Defendant Brandt in cell 301 of the F Housing unit, the scene of Baxter-Jensen's attempted suicide.

37.     Baxter-Jensen was brought by Gold Cross Emergency Service Personnel to St. Cloud Hospital at approximately 9:10 a.m. on November 14, 2010, where he underwent irrigation and debridement of his wounds.

38.     Baxter-Jensen was diagnosed as follows:  (1) Bilateral wrist lacerations; (2) neck laceration; and (3) suicide attempt.

39.     Medical personnel closed Baxter-Jensen's sixteen (16) centimeter neck wound with multiple sutures and twenty-six (26) staples.

40.     According to jail medical records, Baxter-Jensen's right wrist wound required six (6) sutures and his left wrist wound required twelve (12) sutures.

41.     Baxter-Jensen reported to St. Cloud Hospital personnel that he attempted suicide on November 14, 2010, a fact which was obvious to correctional and medical personnel alike.

42.     This serious attempt at suicide was performed in a very difficult, painful and unusual manner, especially for a person not under the influence of drugs or alcohol.

43.     Nine Stearns County personnel drafted reports on the November 14, 2010 suicide attempt by Baxter-Jensen, including Defendant Brandt.

44.     The unusual and gruesome November 14, 2010 suicide attempt by Baxter-Jensen and his serious mental health needs were quickly known by all correctional officers, correctional staff and Command and Control personnel of the Stearns County Sheriff's Department.

45.     Similarly, the November 14, 2010 suicide attempt by Baxter-Jensen and his serious mental health needs were known by all jail medical staff, including Defendants Byker, Millicent and Leonard.

46.     Defendant Brandt's report noted he participated in cleaning up cell F301, which contained massive amounts of Baxter-Jensen's blood.

47.     Defendant Brandt had actual knowledge of Baxter-Jensen's November 14, 2010 suicide attempt, the means by which the attempt was made and the seriousness of the attempt.

48.     The unique manner in which the November 14, 2010 suicide attempt occurred, especially when combined with his history and present manifestations of serious mental illness, mandated that all razors and other sharp or edged materials not be available to in Baxter-Jensen during his incarceration at the Stearns County Jail.

49.     Dr. Scott Houghton of St. Cloud Hospital ordered that: "[t]he patient will require psychiatric evaluation, after recovering from surgery." This information is ordered in the special instructions in the "Discharge Summary" for Baxter-Jensen and under the "History & Physical."

50.     According to the Authorization to Release Information from St. Cloud Hospital to the Stearns County Jail dated November 14, 2010, both the "Discharge Summary" and the "History & Physical" were included in the documents provided to the Jail for the purpose of "[c]ontinued healthcare/medication management" of Baxter-Jensen.

51.    Baxter-Jensen was transported back from the St. Cloud Emergency Room to the Stearns County Jail on November 14, 2010, the same day as his suicide attempt. That required psychiatric evaluation was never completed at the Sterns County Jail or otherwise.

52.    Upon arriving back at the Stearns County Jail, it is claimed Baxter-Jensen "verbally contracted for safety" stating to Stearns County jail staff that he would not hurt himself, something now incredible given his past serious attempt despite similar promises and his obvious mental illness

53.    Baxter-Jensen was taken at his word from this "verbal contract," along with other self-assessments and self-reports that he would not harm himself and that he was not suicidal despite Defendants' actual knowledge of his serious mental health needs and recent serious suicide attempt, which were preceded by the same type of self-reports and verbal assurances, establishing that he had no insight as to his own mental health crisis.

54.    On November 15, 2010, Baxter-Jensen remained in the booking area in a suicide smock with safety blankets, where he denied thoughts, feelings or plans of suicide and it is claimed that Baxter-Jensen "agree[d] to plan to continue 10" ✓s in current setting."

55.    Also on November 15, 2010, only one day after his suicide attempt, Defendant Millicent, a Licensed Clinical Social Worker and not a psychiatrist who could clinically evaluate Baxter-Jensen and prescribe new or additional medications, followed up with Baxter-Jensen and completed a suicide risk assessment, not the required psychiatric evaluation. This risk assessment provided that Baxter-Jensen denied suicidal ideation and rated himself at a one (1) out of ten (10), with one being no risk and ten being imminent risk.

56.     On the November 15, 2010 suicide risk assessment, Defendant Millicent noted Baxter-Jensen had minimal and poor insight and that she doubted his level of disclosure.

57.     Unbelievably, Defendant Millicent moved Baxter-Jensen to "close observation" and noted considering moving Baxter-Jensen back to general housing at this time.

58.     On November 16, 2010, during the first of three physician assessment forms, which was, upon information and belief, signed and created in-part by Defendant Leonard, Baxter-Jensen was noted as depressed and was to be kept on "close watch." The majority of the form, including the subjective/history, objective/exam and assessment plan information is illegible.

59.     After November 14, 2010, the individual defendants had actual knowledge – or knowledge that can be imputed because of its obviousness – that Baxter-Jensen had no insight into his mental health crisis and that his self-reports were wholly unreliable given the similar reports he made leading up the November 14, 2010 suicide attempt.

60.     On November 18, 2010, in the second physician assessment form that was, upon information and belief, signed and created in-part by Defendant Leonard, noted Baxter-Jensen was doing well on his "time out" and scheduled him to move back to a general housing pod, where he would remain on "close observation." No rationale for the move back to general housing was provided.

61.     On November 18, 2010, correctional officer Kathlene Minkel heard Baxter-Jensen state during a visit with his girlfriend that she could keep his things because he was

not going to need them anymore. Baxter-Jensen made additional comments that made correctional officer Minkel fear that Baxter-Jensen would again attempt suicide.

62. On November 19, 2010, in a Medical Staff Narrative Note, Defendant Byker relayed knowledge of Baxter-Jensen's conversation with his girlfriend where they "broke up," but noted, without foundation, Baxter-Jensen was "upset but not suicidal" and just wants to have his precautions changed.

63. On November 20, 2010, in a Verbal Order Form, less than one week after the serious suicide attempt and a mere two days after an expressed suicidal ideation, Defendant Leonard discontinued Baxter-Jensen's "suicide risk" classification. No reason or basis for Defendant Leonard's medical decision is documented.

64. On November 20, 2010 Baxter-Jensen remained on close observation and razor watch, but was allowed to live on the bottom tier of the F housing unit and to have a roommate.

65. On Baxter-Jensen's medical request form dated November 20, 2010, he requested an increase in his amytriptaline because he was "having serious anxiety problems." The documentation, including the Medical Administration Records do not indicate this was ever addressed.

66. In a November 21, 2010 medical staff narrative note, it is reported that Baxter-Jensen became more anxious from living in the general population.

67. On the third and final Physician Assessment Form regarding Baxter-Jensen, it appears that it was created on November 22, 2010, but was not signed by Defendant Leonard until November 23, 2010. There appears to be various authors on the Form and

the subjective/history, objective/exam, assessment plan and plan sections are illegible and poorly documented. It does appear that Defendant Leonard may have increased Baxter-Jensen's amitriptyline and that Baxter-Jensen was to let Leonard know how he was doing in 2-3 weeks. Baxter-Jensen did not survive long enough to provide this update to Leonard.

68. In a November 26, 2010 Medical Request Form from Baxter-Jensen he inquires how long he has to request for supervised shaving. On this form Defendant Byker notes in the medical response to his inquiry (dated November 29, 2010) that Baxter-Jensen "denies depression, thoughts/actions self harm. Does not feel need to see Mary – mental health."

69. "Close observation" of Baxter-Jensen was discontinued on November 30, 2010 absent any documented medical rational for the decision. The supervised shaving restriction remained in place.

70. Letters Baxter-Jensen wrote to his family and his girlfriend during this period further illustrate his acute mental health crisis and provide insight regarding his continuing plan to take his own life.

71. Upon information and belief, these letters were turned in to and reviewed by jail staff.

72. Further, in a phone call recorded by correctional authorities on December 3, 2010 to Baxter-Jensen's girlfriend, Baxter-Jensen stated: "I won't probably talk to you many more times, ever, here, you know" and "I just wish it could all end, you know…"

## DEFENDANTS' ACTUAL KNOWLEDGE OF SUICIDE RISK

73.     The Stearns County Jail Suicide Prevention Plan notes that "[d]epression is the basis behind the risk of suicide" and that "[t]he risk of suicide is much greater in the jail population than in the general public."

74.     "Suicide is the leading cause of death in jail settings." Therefore, jail staff is to pay particular attention to inmates who demonstrate "past history of suicide attempts or mental health problems, intense anxiety…suicide statements, active discussion of suicide plans, saying goodbye to family members…loss of relationship…" – conditions that were exhibited or present with Baxter-Jensen.

75.     Some or all of the individual defendants knew that Baxter-Jensen banged his head and was agitated and assaultive upon arrest.

76.     Some or all of the individual defendants knew that Baxter-Jensen had received psychiatric treatment in the past.

77.     All of the individual defendants knew that Baxter-Jensen had attempted suicide before his admittance to the Stearns County Jail on November 13, 2010 and before he cut his own throat and wrists. Further, the November 14, 2010 attempt occurred after his admittance and despite a prior promise to report thoughts of self-harm.

78.     All of the individual defendants knew that Baxter-Jensen had a serious medical need in the form of severe mental illness during his time at the Stearns County Jail in November 2010.

79.     Some or all of the individual defendants knew that Baxter-Jensen had been prescribed antidepressant medication.

80.     The November 14, 2010 suicide attempt provided all of the individual defendants, Stearns County and MEnD with actual knowledge of Baxter-Jensen's obvious serious medical needs, i.e., that he was in an acute mental health crisis and an imminent suicide risk with an _expressed intention_ to get the job done.

81.     Prior to December 4, 2010, all of the individual defendants, Stearns County and MEnD knew the means by which the November 14, 2010 suicide attempt was executed, i.e. cutting his throat and wrists with a disassembled razor blade he obtained from correctional staff at the Stearns County Jail.

82.     Prior to December 4, 2010, some or all of the individual defendants, Stearns County and MEnD knew of Baxter-Jensen's continued suicidal ideation from the comments to his girlfriend, which occurred after the suicide attempt and within this same period of confinement.

83.     Prior to December 4, 2010, some or all of the individual defendants, Stearns County and MEnD knew of Baxter-Jensen's continued suicidal ideation from the letters to his girlfriend and to Plaintiff, which also occurred after the suicide attempt and within this same period of confinement.

84.     Prior to December 4, 2010, some or all of the individual defendants, Stearns County and MEnD knew that Baxter-Jensen remained on razor watch and that he was not to possess a razor without being monitored by jail personnel.

85.     Prior to December 4, 2010, some or all of the individual defendants, Stearns County and MEnD knew that Baxter-Jensen's verbal assurances not to harm himself and his self-reports regarding suicidal ideation were wholly unreliable and demonstrably inaccurate

given the circumstances leading up to his November 14, 2010 suicide attempt in their custody.

86.     Prior to December 4, 2010, Baxter-Jensen's mental illness, his previous suicide attempt within this same period of confinement, and his continued suicidal ideations expressed in the presence of guards and relayed to some or all of the individual medical staff defendants illustrated Baxter-Jensen remained an objectively obvious suicide risk while he was an inmate at the Stearns County Jail and Defendants knew or must have known of the substantial risk of serious harm that existed.

## THE SUICIDE

87.     On December 4, 2010, Defendant Brandt was assigned to West Housing, including units G and F.

88.     Defendant Brandt began razor issue at approximately 8:05 a.m. on December 4, 2010.

89.     Multiple razors were issued to inmates in unit F of West Housing, including two to Baxter-Jensen's roommate, Darrel Twombly, identified as razors #645 and #652, despite the fact that Baxter-Jensen remained on razor watch.

90.     At approximately 8:09 a.m., Darrel Twombly brought razors #645 and #652 back to his cell, 201, where Baxter-Jensen was waiting.

91.     Darrel Twombly's incarceration in the Stearns County Jail began on December 2, 2010.  He was never made aware that Baxter-Jensen was on razor watch.

92.     Approximately thirty (30) seconds later, Baxter-Jensen left his cell for the open shower in housing unit F.

93.     Approximately two minutes after Baxter-Jensen left his cell, Defendant Brandt checked cell 201, which only contained inmate Twombly.

94.     At approximately 8:11:50 a.m., Defendant Brandt knocked on the shower. Defendant Brandt claims he received a verbal response.

95.     For the next nine minutes, the inmates of West Housing unit F became visibly anxious.  They can be seen on surveillance video pacing around with their towels and eventually crowding around the staff office area.

96.     At approximately 8:20:31, an inmate knocked on the unit F shower door. Immediately afterwards, the same inmate can be seen getting Defendant Brandt's attention.

97.     Defendant Brandt walked back towards the inmate and the shower. Defendant Brandt opened the door and observed Baxter-Jensen lying face down in a puddle of blood with his head near the drain.

98.     Pieces of white disassembled razor #652, one of the razors Defendant Brant assigned to Baxter-Jensen's roommate, were also found on the floor of the F unit shower near Baxter-Jensen.

99.     Defendant Brandt used his shoulder radio and then walked away while Baxter-Jensen remained in the shower.

100.     Defendant Brandt did not check Baxter-Jensen for a pulse or for respirations.

101.     Defendant Brandt did not immediately provide emergency medical assistance to Baxter-Jensen.

102.    Approximately one minute later, multiple Stearns County personnel arrived in the F unit, and Baxter-Jensen was finally pulled out of the shower by other jail personnel. He was rolled onto his back and resuscitation efforts were started.

103.    Ambulance personnel arrived on the scene at approximately 8:30 a.m.

104.    Baxter-Jensen was pronounced dead at approximately 9:10 a.m. on December 4, 2010, approximately one hour after the razor entered cell 201.

105.    Baxter-Jensen used one of the razors Defendant Brandt assigned to Baxter-Jensen's roommate, Darrell Twombly, to create a self-inflicted incised wound to his neck and throat, which measured 9.5 inches in length.

106.    The wound tracked from left to right and covered the entire front surface of Baxter-Jensen's neck.

107.    Baxter-Jensen's neck wound was 1 inch deep on the left side and 3/8ths of an inch deep on the right side. The wound proceeded into the skin and extended into the soft tissue, superficial muscles, external jugular veins and the cricothyroid ligament.

108.    Dr. Kelly Mills, the Principal Assistant Medical Examiner of Ramsey County Medical Examiner's Office, determined Baxter-Jensen's cause of death was exsanguination due to the incised wound to the neck. The manner of death was suicide.

109.    Baxter-Jensen's toxicology screen was positive only for Citalopram, i.e., Celexa, and Amitriptyline and Nortriptyline, all of which are medications that treat depression.

110.    Throughout his confinement at the Stearns County Jail, Baxter-Jensen displayed obvious signs that he remained a serious suicide risk.

18

111.    The Defendants failed to take precautions to ensure razors could not and would not be accessed by Baxter-Jensen unless he was supervised by correctional staff.

112.    Despite actual knowledge of Baxter-Jensen's November 14, 2010 suicide attempt and the continued serious risk of suicide, Defendant Brandt ignored Baxter-Jensen's serious medical needs and failed to keep razors out of his possession

113.    Additionally, Defendants did not alert Twombly, who had just come to Stearns County Jail, of his roommate's razor restrictions and actual the importance of them.

## CONTEMPORANEOUS INVESTIGATION OF DEFENDANT LEONARD'S PRACTICE

114.    Sometime in early 2008, the Minnesota Board of Medical Practice initiated an investigation into Defendant Leonard by the Attorney General's office.

115.    On October 8, 2008, Defendant Leonard met with the Complaint Review Committee of the Minnesota Board of Medical Practice and discussed the allegations against him.  The Committee decided to continue the case pending an audit of Dr. Leonard's practice by the Attorney General's office.

116.    Ultimately the Minnesota Board of Medical Practice and Defendant Leonard agreed to the language of the resultant May 14, 2011 Stipulation and Order, attached hereto as Exhibit B states: "A review of [Leonard's] practice revealed that, on multiple occasions [Leonard] authorized narcotics, but failed to document objective clinical findings to support the need for ongoing medications; failed to document an assessment for his patients' risk of chemical dependency, toxicity, diversion, or suicide; failed to document discussions regarding potential side effects of the drugs; failed to monitor the efficacy of the medications; failed to implement narcotic contracts or conduct biological fluid screens; and

19

failed to recognize drug seeking behavior in his patients. **[Leonard] also failed to address collateral health concerns or routine health maintenance care**."

117.    Further, that the same "review of [Leonard's] practice also revealed that **[Leonard] failed to appropriately maintain and adequately document his clinic records. Respondent's clinic notes were frequently cursory, incomplete and illegible. Respondent often failed to document a diagnosis, adequate patient history, or a rationale for prescribed medications**. On multiple occasions, [Leonard] prescribed controlled substances for his patients, but failed to adequately document the specific name of the medication, authorized quantity, or the strength of the medication in the clinic record." *See* Exhibit B at 2.

118.    "On February 11, 2010, [Leonard] appeared before the Complaint Review Committee and discussed his patient care, prescribing practices, documentation, and professional conduct with his patients. **[Leonard] acknowledged his failure to consistently document his patient charts in a complete and legible manner**." *See* Exhibit B at 3.

119.    By Stipulation and Order on May 14, 2011, Defendant Leonard's license to practice medicine and surgery in the State of Minnesota **"was restricted and conditioned based upon his unethical and unprofessional conduct, failure to maintain adequate medical records, and inappropriate prescribing practices**" in prior years.

120.    Similarly, the failure to maintain adequate medical records, failure to document adequate patient history or adequate diagnosis, and the cursory, incomplete and illegible nature of his medical records is patently observable through Defendant Leonard's and

MEnD records regarding Baxter-Jensen, which were drafted contemporaneously with the ongoing audit of his practice by the Attorney General, which led to his restrictions.

121. Additionally, the individual jail medical Defendants (MEnD employees), exhibit the same problems with regard to incomplete, inaccurate and illegible record keeping and evaluation.

122. Baxter-Jensen's MEnD and Stearns County Jail medical records are replete with revisions, the authors of which and the dates on which they were made are oftentimes indecipherable.

## MEnD & STEARNS COUNTY CONTRACT

123. The provision of mental health care by MEnD and Defendant Leonard was not contemplated in the original agreement between Stearns County and MEnD in July of 2010 during the pendency of the investigation and audit of Defendant Leonard by the Attorney General for the State of Minnesota.

124. The Original Contract between MEnD and Stearns County is attached hereto as Exhibit C and set a monthly fee of $54,265.00 to be paid to MEnD for the provision of medical care to Stearns County inmates for the next year.

125. In November of 2010, MEnD and Leonard were neither fit nor qualified to provide or to supervise the provision of mental health care to the inmates of Stearns County Jail mandated by the United States Constitution. Despite that fact, MEnD and Leonard entered into an "Addendum" with Stearns County to do exactly that for an additional flat fee of only $3,333.00 per month., about 6% of the total contract amount. A copy of the Addendum is attached hereto as Exhibit D.

126.     The Addendum lists three individuals occasionally available for mental health care at the Stearns County Jail under the contractual agreement with MEnD and Defendant Leonard: John Eggers (psychologist); Mary Millicent (LICSW) and Brandon Smith (Nurse Practitioner).

127.     Neither Mr. Eggers or Mr. Smith appear anywhere in Baxter-Jensen's medical records from Stearns County Jail.

128.     Instead, Defendants Millicent and Byker, two individuals lacking the licensing and qualifications to perform the required psychiatric evaluation of Baxter-Jensen after his serious suicide attempt of November 14, were the MEnD employees involved with his suicide assessments upon his return from St. Cloud Hospital.

129.     From the records, it cannot be determined why Baxter-Jensen was prematurely taken from St. Cloud Hospital back to jail, what information the medical Defendants reviewed, and their medical rationale for decisions to lower Baxter-Jensen's risk assessments throughout his stay at Stearns County Jail from November 13, 2010 to December 4, 2010.

130.     However, the scheme in the Addendum to the Contract between MEnD and Stearns County, calling for an insignificant flat fee for mental health services – less than 6% of the entire contract fee paid to MEnD (an amount well below the national and Minnesota's level of actual spending on inmate mental health care) – incentivized lack of treatment with regard to mental health issues in an environment where there is a significantly heightened risk of such issues.

131.    MEnD and the MEnD Defendants Byker, Millicent and Leonard were unqualified to assess and/or incentivized to ignore Stearns County Jail inmates' serious medical mental health needs, leading to the violation of Baxter-Jensen's constitutional rights.

132.    The unqualified MEnD Defendants and/or the incentives within the Stearns County/MEnD contract lead them to act with deliberate indifference violation of Baxter-Jensen's constitutional rights.

## COUNT ONE

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS

#### *Plaintiff v. Defendant Travis Brandt*

133.    Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

134.    Severe mental illness and suicidal ideation are serious medical needs.

135.    Defendant Brandt had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

136.    Defendant Brandt, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and his serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

137.    Defendant Brandt, under the color of state law, knew of and disregarded an obvious and serious risk to Baxter-Jensen's health and safety and acted with deliberate

indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

138.     Defendant Brandt subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendant Brandt's actions.

139.     Baxter-Jensen died as a direct and proximate result of Defendant Brandt's acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

140.     Punitive damages are available against Defendant Brandt and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

141.     Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT TWO

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS

#### *Plaintiff v. Elaine Byker*

142.     Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

143.     Severe mental illness and suicidal ideation are serious medical needs.

144.     Defendant Byker had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

145.     Defendant Byker, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

146.     Defendant Byker, under the color of state law, knew of and disregarded an obvious and serious risk to Baxter-Jensen's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

147.     Defendant Byker subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendant Byker's actions.

148.     Baxter-Jensen suffered and died as a direct and proximate result of Defendant Byker's acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

149.     Defendant Byker, as a nurse employed by the private medical provider, MEnD, is not entitled to qualified immunity under *Richardson v. McKnight*, 521 U.S. 399 (1997); *Harrison v. Ash*, 539 F.3d 510 (6th Cir. 2008).

150.     Punitive damages are available against Defendant Byker and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

151.    Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT THREE

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS

***Plaintiff v. Mary Millicent***

152.    Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

153.    Severe mental illness and suicidal ideation are serious medical needs.

154.    Defendant Millicent had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

155.    Defendant Millicent, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

156.    Defendant Millicent, under the color of state law, knew of and disregarded an obvious and serious risk to Baxter-Jensen's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

157.    Defendant Millicent subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendant Millicent's actions.

158.     Baxter-Jensen suffered and died as a direct result and proximate cause of Defendant Millicent's acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

159.     Defendant Millicent, as a licensed social worker employed by the private medical provider, MEnD, is not entitled to qualified immunity under *Richardson v. McKnight*, 521 U.S. 399 (1997); *Harrison v. Ash*, 539 F.3d 510 (6th Cir. 2008).

160.     Punitive damages are available against Defendant Millicent and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S.20 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

161.     Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT FOUR

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS

#### *Plaintiff v. Todd Leonard, MD*

162.     Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

163.     Severe mental illness and suicidal ideation are serious medical needs.

164.     Defendant Leonard, as the Responsible Health Authority of Stearns County Jail, the Jail Medical Director, the Jail Physician, policy maker, and sole owner of MEnD Correctional Care had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

165.     Defendant Leonard, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

166.     Defendant Leonard, under the color of state law, knew of and disregarded an obvious and serious risk to Baxter-Jensen's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

167.     Defendant Leonard subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendant Leonard's actions.

168.     Baxter-Jensen suffered and died as a direct result and proximate cause of Defendant Leonard's acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

169.     Defendant Leonard, as the Responsible Health Authority employed by the private medical provider, MEnD, is not entitled to qualified immunity under *Richardson v. McKnight*, 521 U.S. 399 (1997); *Harrison v. Ash*, 539 F.3d 510 (6th Cir. 2008).

170.     Punitive damages are available against Defendant Leonard and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S.20 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

171.     Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT FIVE

## CIVIL RIGHTS VIOLATIONS – SUPERVISORY LIABILITY

### *Plaintiff v. Todd Leonard, MD*

172.     Plaintiff reallages and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

173.     Severe mental illness and suicidal ideation are serious medical needs.

174.     Defendant Todd Leonard, MD had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

175.     Defendant Todd Leonard, MD was a supervisory employee as the owner of MEnD and the Responsible Health Authority at Stearns County Jail, and he, with callous or reckless indifference to the rights of inmates, failed to properly supervise, instruct, supervise, and train correctional and medical staff in the recognition of inmates with serious mental health needs, inmates who are suicidal and in the prevention of suicide in correctional facilities.

176.     Defendant Todd Leonard, MD, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

177. Defendant Todd Leonard, MD subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendant Leonard's actions.

178. Baxter-Jensen suffered and died as a direct and proximate result of Defendant Todd Leonard's acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

179. Punitive damages are available against Defendant Todd Leonard and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

180. Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT SIX

## CIVIL RIGHTS VIOLATIONSMONELL V. DEP'T OF SOCIAL SERVICES

### *Plaintiff v. MEnD*

181. Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

182. Before December 4, 2010, MEnD Correctional Care, PLLC, with deliberate indifference to the rights of inmates at the Stearns County Jail, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern or practice on the part of its medical staff, including Defendants Byker, Millicent and Leonard, of failing to provide for

the safety and general well-being of inmates and failing to protect inmates from themselves and/or risks of suicide.

183.    MEnD staffed Stearns County Jail with individuals unqualified to assess Baxter-Jensen's serious medical needs and/or incentivized them to ignore his serious medical needs.

184.    There is a direct and causal link between MEnD's maintenance of a systemic, dangerous and unconstitutionally deficient medical care system and the successful suicide of Baxter-Jensen, which occurred during the same period of confinement as his serious attempt and in the same, gruesome manner as his serious attempt.

185.    Baxter-Jensen's suffering and wrongful death and the violation of his civil rights were directly and proximately caused by the aforementioned acts and omissions by MEnD's policies, customs, patterns or practices, and MEnD is thereby liable in an amount as yet to be determined. Punitive damages are available against Defendant MEnD Correctional Care, PLLC, and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 20 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20. *See Woodward v. Correctional Medical Services*, 368 F.3d 917 (7th Cir. 2004); *Revilla v. Glanz*, 8 F. Supp. 3d 1336 (N.D. Okla. 2014).

186.    Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

# COUNT SEVEN

## CIVIL RIGHTS VIOLATIONS

### *Plaintiff v. Supervisory Defendants John Does 1-2*

187.    Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

188.    Severe mental illness and suicidal ideation are serious medical needs.

189.    Defendants John Does 1-2 had a duty to provide for the safety and general well-being of Baxter-Jensen, including protecting him from himself, as an inmate at the Stearns County Jail.

190.    Defendants, as supervisory employees, with callous or reckless indifference to the rights of inmates, failed to properly supervise, instruct and train correctional and medical staff in the recognition of inmates with serious mental health needs, inmates who are suicidal and in the prevention of suicide in correctional facilities.

191.    Defendants John Does 1-2, under the color of state law, acted with deliberate indifference to Baxter-Jensen's life-threatening medical needs and serious risk of suicide during his confinement at the Stearns County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

192.    Defendants John Does 1-2 subjected Baxter-Jensen to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Baxter-Jensen's rights would be violated by Defendants John Does 1-2 actions.

193.     Baxter-Jensen died as a direct and proximate result of Defendants John Does 1-2 acts and omissions, and Plaintiff was thereby damaged in an amount as yet to be determined.

194.     Punitive damages are available against Defendants John Does 1-2 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

195.     Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT EIGHT

### CIVIL RIGHTS VIOLATIONS
### MONELL V. DEP'T OF SOCIAL SERVICES

*Plaintiff v. Stearns County*

196.     Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

197.     Before December 4, 2010, Stearns County, with deliberate indifference to the rights of inmates at the Stearns County Jail, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern or practice on the part of its correctional officers, including Defendant Brandt, of failing to provide for the safety and general well-being of inmates and failing to protect inmates from themselves and/or risks of suicide.

198.     By contracting with Defendants MEnD and Leonard, who were unfit to provide Stearns County inmates with Constitutionally mandated mental health care, Stearns County itself was deliberately indifferent to the serious medical needs of its inmates.

199.     Baxter-Jensen's wrongful death and the violation of his civil rights were directly and proximately caused by the aforementioned acts and omissions and the customs, patterns or practices of Stearns County itself or MEnD, the agent of Stearns County, and Stearns County is thereby liable in an amount as yet to be determined.

200.     Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT NINE

### FAILURE TO TRAIN UNDER
### CITY OF CANTON V. HARRIS

#### *Plaintiff v. Stearns County*

201.     Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

202.     Stearns County, with deliberate indifference to inmates at the Stearns County Jail, failed to properly train correctional and medical staff and failed to adopt, implement or require adherence to appropriate policies to provide timely and appropriate care for inmates with serious mental illness.

203.     Defendant Stearns County, by such conduct, demonstrated deliberate indifference and a protracted failure to care for the safety of Baxter-Jensen who had an obvious and serious medical need in the form of a severe mental health crisis coupled with prior suicidal ideation and a prior suicide attempt at the Stearns County Jail.

204. Baxter-Jensen's wrongful death and the violation of his civil rights was directly and proximately caused by the aforementioned acts and omissions and by Stearns County's customs, patterns, and/or practices, and Stearns County is thereby liable in an amount as yet to be determined.

205. Plaintiff is entitled to recovery of her costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kathleen C. Baxter-Knutson as trustee for the next-of-kin of Kyle Allan Baxter-Jensen prays for judgment against Defendants as follows:

1. That this Court find that the Defendants committed acts and omissions constituting violations of the Eighth and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983;

2. As to Count I, a money judgment against Defendant Travis Brandt for compensatory and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

3. As to Count II, a money judgment against Defendant Elaine Byker for compensatory and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

4. As to Count III, a money judgment against Defendant Mary Millicent for compensatory and punitive damages in an amount to be determined by the jury, together

with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

5.      As to Count IV, a money judgment against Defendant Todd Leonard, MD for compensatory and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

6.      As to Count V, money judgment against Defendant Todd Leonard, MD for compensatory and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

7.      As to Count VI, a money judgment against Defendant MEnD Correctional Care, PLLC for compensatory and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

8.      As to Count VII, a money judgment against Defendants s John Doe 1-2 for compensatory and punitive damages in to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

9.      As to Count VIII, a money judgment against Stearns County for compensatory damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

10. As to Count IX, a money judgment against Stearns County for compensatory damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

11. For an order mandating changes in the policies and procedures of the Stearns County Jail requiring, among other things, policy/training measures in the recognition of serious mental illness and suicidal ideation in correctional facilities and in the prevention of suicide among inmates in correctional facilities; and

12. For such other and further relief as this Court may deem just and equitable.

GASKINS BENNETT BIRRELL SCHUPP L.L.P.

Date: September 16, 2015    s/Robert Bennett

Robert Bennett, #6713
Andrew J. Noel, #322118
Kathryn H. Bennett, #0392087
333 South Seventh Street, #3000
Minneapolis, MN 55402
Telephone: 612-333-9500
rbennett@gaskinsbennett.com
anoel@gaskinsbennett.com
kbennett@gaskinsbennett.com
Attorneys for Plaintiffs